IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Criminal Action |
| JUSTIN D. WOOLIVER, | ) | No. 11-03027-01-CR-S-RED |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant filed a Motion to Suppress Evidence [Doc. #21], to which the government responded [Doc. # 22-1]. The matter was set for an evidentiary hearing, which was held before the undersigned on October 17, 2011. Defendant was represented by counsel, David R. Mercer, and the government was represented by James J. Kelleher, Assistant United States Attorney.

Defendant seeks suppression of all evidence seized on December 16, 2008, which was obtained directly or indirectly from an illegal stop and seizure and any custodial statements made to law enforcement after his arrest. It is his position that the search of the vehicle was an illegal search incident to arrest, in violation of United States v. Gant, 129 S.Ct. 1710, 1723-24 (2008). He asserts that there is no evidence that he was within reaching distance of the passenger compartment of the van because he was outside the vehicle in double-locked handcuffs. Additionally, it is his position that the police offered no particularized evidence establishing probable cause that the van would contain contraband or evidence relating to the offense of arrest.

The government first called Officer Dale Sokolik of the Springfield Police Department. He

1

was on duty on December 16, 2008. He testified that he knew defendant previously through police contact involving drug activity and theft. On the day in question, he saw a van apparently broken down in an intersection. He observed defendant exit the vehicle and pop the hood. The officer thought there was an outstanding warrant for defendant's arrest, so he approached defendant and spoke to him. Defendant told him his vehicle was disabled, and the officer called for a back-up officer. Officer Broberg arrived shortly thereafter. Officer Sokolik asked defendant about the warrant and he said he had already taken care of it. He then ran a warrant check, and found out that there was not an outstanding warrant. Officer Broberg then informed Officer Sokolik that he had received consent to search and had located a hypodermic needle on defendant's person. The syringe had some droplets of some unknown substance. The officer testified that this type of needle is commonly used for illegal narcotics, such as methamphetamine. Predicated on his earlier encounters with defendant, he was aware of his drug habit and this was consistent with his drug use. He asked defendant about the purpose of the syringe, and he initially indicated that he was diabetic. Then the officer asked him if he was diabetic and he said he wasn't. Officer Sokolik then placed him under arrest. He searched his person and found a ring with initials that were not defendant's, as well as several keys and some type of coin. Although defendant said the ring had been his uncle's, based on the officer's experience with defendant, he believed he might be in possession of stolen property. He testified that he called for a K-9 unit because of the possibility of narcotics in the vehicle, based on having found evidence of narcotic's usage on defendant's person. The K-9 officer arrived within a matter of minutes. The officer testified that he did not know if the van door was opened by the K-9 unit or opened prior to the arrival of the unit. He stated that "underneath the front passenger's seat, I located a pistol. Saw it in plain view." [Tr. 8]. He seized the pistol, based on defendant's prior

convictions and the other occupant of the vehicle's prior convictions. After arresting defendant, he ran a computer check, and discovered that the license plate was registered to a different vehicle and the vehicle was not registered to defendant. Pursuant to Springfield Police Department policy, he had the car towed. This process was handled by the K-9 officer. According to policy, prior to a vehicle being towed, a search is conducted to ensure that there's no additional contraband in the car. It is also department policy to annotate any items of value on the tow sheet. According to the tow sheet, a car battery was noted as being inside the vehicle.

On cross-examination, the officer testified that he arrested defendant for being in possession of drug paraphernalia, and not for being in possession of stolen items. Officer Broberg found the syringe, and Officer Sokolik arrested defendant, placed him in handcuffs, and secured him away from the van. Prior to the K-9 unit arriving, there had been no search of the vehicle. The officer agreed that in his report, he characterized the search as a search incident to arrest. He agreed that he did not say in his report that the search was pursuant to the automobile exception or that there was any basis to believe that the van contained evidence or contraband. The syringe was located in defendant's jacket, and he believed it was evidence of drug use. He had no specific evidence that the van might contain evidence of criminal activity, but he thought it possibly could. During the course of the investigation, it was determined that the owner of the van was a female named "Angela." [Tr. 14]. He acknowledged that she was interviewed after defendant was arrested, and she told another officer that the van was a mess on the inside. He did not recall whether he looked inside the van through the windows before the K-9 unit arrived, and did not recall whether it was a mess or not. He also did not recall whether the dog circled the vehicle; although the dog got into the van through one of the doors, he did not recall who opened the door. The officer testified that, to his knowledge, the dog

3

never alerted on the vehicle. His report indicated that the driver's side door was opened while the dog searched. He agreed that the style of van had standard bucket seats for the passenger and river. When he saw the firearm, he was outside the vehicle, but he wasn't exactly sure where. He thought he was by the sliding portion of the door, more towards the middle of the van. Looking towards the front of the van, he was able to see underneath the bucket seat on the driver's side. He observed the firearm under the driver's seat from outside the vehicle without sticking his head into the van. Officer Sokolik agreed that he did not know if the inventory search was conducted in conformity with Springfield Police Department policies and procedures because he did not conduct the search, nor did he complete the tow sheet. He did state that it is not uncommon for only one item to be listed, which, in this case was the battery found in the vehicle.

On redirect examination, the officer testified that he did not search the entire vehicle incident to arrest in this case, even though, in 2008, it would have been legal to do so. Based on his experience with defendant in terms of drug usage, as well as having found drug paraphernalia on his person, he developed particularized suspicion. The purpose of calling the K-9 unit was to search for drugs in the van. In this case, he was particularly interested in searching for drugs based on his experience with defendant and because of having found evidence of drug usage on him.

On re-cross examination, Officer Sokolik reiterated once again that he developed particularized suspicion of the van containing drugs or contraband based on defendant's past history and the needle that was found on his person.

The government next called Officer Kurt Broberg of the Springfield Police Department. He was called by Officer Sokolik to come to the investigation that he was conducting as a back-up officer. When he arrived, he saw two individuals standing outside of a blue van that appeared to be

4

stalled in an intersection. Officer Sokolik asked him to stand by the two subjects while he checked them for outstanding warrants. One of the individuals was defendant. While Officer Sokolik conducted the warrant search, defendant asked to get his cigarette lighter from the van. Prior to saying he could, Officer Broberg asked him for consent to search his person. The officer testified that defendant gave consent and "immediately turned around and put his hands behind his head assuming a possession that led me to believe that, yes, he was fine, just like he said, with me searching his person." [Tr. 30]. As soon as he started the search, defendant told him that he had a syringe in his pocket. The officer then removed a syringe with a bit of fluid inside from his outer coat pocket. He had no further interaction with defendant.

On cross examination, Officer Broberg testified that the syringe was on defendant's person, not in the van. Defendant was outside of the van when he conducted the search.

Defendant submits that the evidence seized from the search conducted by Officer Sokolik as "incident to arrest" should be suppressed. It is asserted that because defendant was handcuffed and away from the vehicle, the search incident to arrest is a clear violation of Arizona v. Gant, 556 U.S. –, 129 S.Ct. 1710 (2009).

It is the government's position that the automobile exception is applicable in this case because once defendant was arrested, a search of the vehicle was legal because the officer had reasonable cause to believe that the vehicle contained evidence of the offense of arrest. Because there was a fair probability that contraband would be found in the vehicle, the automobile exception would allow the search of the vehicle without a warrant. It is also argued by the government that even if the officer did not possess the requisite cause to search, the firearm would have been inevitably discovered during the inventory conducted prior to the vehicle being towed from the scene. In reliance on

5

United States v. Frasher, 632 F.3d 450, 454 (8th Cir. 2011), the government asserts that an inventory search is another exception to the warrant requirement. The central question is whether, under the totality of the circumstances, the search was reasonable by being conducted in accordance with standardized police procedures.

After careful review of the record, the Court finds that the officer had probable cause to search the vehicle in this case. Initially, regardless of Officer Sokolik's characterization of the search in his report as being one incident to arrest, it is clear from the facts of the case that the automobile exception to the warrant requirement is applicable. Officer Broberg found drug paraphernalia on defendant's person. Defendant was known to Officer Sokolik through prior police contact to have a history of drug usage. He testified that the syringe would be consistent with defendant's history of methamphetamine usage. While the evidence indicates that defendant was not within reaching distance of the passenger compartment of the van, under Gant, a warrantless search can nevertheless be conducted if the police have particularized evidence establishing probable cause that the vehicle could contain contraband or evidence relating to the offense of arrest. United States v. Gant, 129 S.Ct. 1710, 1723-24 (2008). Probable cause means "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).) "The principal components of a determination of ... probable cause [are] the events which occurred leading up to [a] ... search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to ... probable cause." Ornelas v. United States, 517 U.S. 690, 696 (1996). If there is probable cause to believe an automobile contains contraband, a warrantless search of the automobile is reasonable. United States v. Ross, 456 U.S. 798, 809 (1982); Chambers v. Maroney, 399 U.S. 42, 52 (1969).

In this case, the officer arrested an individual for possession of drug paraphernalia. He had a

known drug history, which the officer described as being involved with illegal narcotics and theft. Pursuant to a consensual search, he was found to be in possession of a syringe consistent with methamphetamine usage, which had some droplets of liquid still inside of it. Defendant admitted to not being a diabetic, which might have been a legal reason to be in possession of the syringe. Upon initial contact, the officer stopped to talk to defendant because he believed that within the last couple of days, there had been a warrant out for defendant's arrest. Defendant admitted to having taken care of the warrant. Therefore, based on the officer's prior knowledge and the occurrences at the scene, the Court believes that the officer had probable cause to believe that the vehicle could contain evidence of the offense of arrest. The fact that a firearm, rather than drugs or drug paraphernalia, was what was discovered and seized does not change the facts that support a legal search for evidence of illegal drug activity in the vehicle. Under the totality of the circumstances of this case, the Court finds that the automobile exception to the Fourth Amendment's warrant requirement justified Officer Sokolik's search and seizure of the firearm found in the vehicle.

Additionally, it is clear that the firearm would have been inevitably discovered during the inventory conducted prior to the vehicle being towed from the scene. Despite defendant's efforts to establish that proper police procedures regarding the inventory of the vehicle were not followed in this case, the issues he raises do not support a finding that there was an illegal inventory search. The fact that there may have been items found in the vehicle that were not listed under the miscellaneous category merely supports defendant's position that the van was very messy and presumably, according to the officer, filled with trash. Defendant does not identify any specific items that were not properly identified or claim that anything was taken from him by police. The Court is of the opinion that there is nothing legally significant about the fact that only the battery was listed on the tow sheet, when that appears to have been the only identifiable item actually found in the van. Given

that defendant was under arrest, it is clear that the van had to be towed, and there is nothing from the evidence before the Court to suggest that any search in conjunction with inventorying the vehicle prior to towing was improper or illegal.

Because the Court finds that there was no Fourth Amendment violation in this case involving the search of defendant's vehicle, his argument that any statements he made after his arrest should be suppressed as "fruit of the poisonous tree" must also fail.

Based on the foregoing, the Court finds that it must be recommended that defendant's Motion to Suppress be denied.

Therefore, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress Evidence be denied.

    /s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date:  11/2/11

9